[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Michael P. McKay ("McKay"), appeals the judgment entered by the Ashtabula County Court of Common Pleas. A jury found McKay guilty of illegal manufacture of drugs, aggravated possession of drugs, and possessing criminal tools for a felony purpose. The trial court sentenced McKay to a term of seven years on each of the first two counts, and eleven months on the possessing criminal tools conviction. The sentences are concurrent.
On August 23, 2000, McKay was at the Flying J Truck Stop in Saybrook, Ohio. McKay approached the store clerk, Ms. Levee, and asked her for directions. He then asked her if she did "crank." He told her that he was running from the law and that he needed to ditch his car.
That morning, Deputy Rose of the Ashtabula County Sheriff's Department was dispatched to the truck stop for a report of suspicious person and a suspicious car. Deputy Rose ran the Tennessee license plate of a Pontiac 2000 and found out the plates were issued for a van.
Deputy Rose then went inside the truck stop and spoke to Ms. Levee, the store clerk who initially contacted the authorities. Ms. Levee identified the Pontiac as the suspicious car and McKay as the suspicious individual. Deputy Rose attempted to speak with McKay about the fictitious license plates, as McKay attempted to enter the Pontiac through the driver side door. His girlfriend, Kimberly Casey ("Casey"), was seated in the driver's seat. Deputy Rose began to question McKay about the plates. McKay questioned Deputy Rose about why he was bothering him. Deputy Rose testified that McKay then reached for his back pocket, and Deputy Rose placed him under arrest.
While McKay was being handcuffed, Casey was attempting to start the Pontiac. Deputy Rose went to stop Casey, and McKay started to run away. Deputy Rose caught McKay, maced him, and placed him in a police cruiser. Casey was also taken into custody, because the police could not verify her identity. Deputy Rose looked inside the vehicle and noticed numerous items associated with drug use, including a white powdery substance and hypodermic needles. Casey died before trial.
McKay raises four assignments of error on appeal. His first assignment of error is:
 "The trial court abused its discretion by allowing, over repeated objections, an expert witness to testify about matters beyond the knowledge or experience possessed by lay persons and which were not included in the expert's report."
Brooklynn Porter ("Porter") is a forensic chemist for the Ohio Bureau of Criminal Investigation. She testified for the state. McKay asserts that Porter should not have been permitted to testify to her findings that a substance found in the car contained pseudoephedrine. First, McKay argues that Porter was not qualified as an expert to testify to her findings of pseudoephedrine, because it is not a controlled substance. The second argument McKay sets forth is that Porter should not have been able to testify regarding pseudoephedrine, because it was not in her report.
The admission of evidence is within the sound discretion of the trial court.[1] That decision may not be overturned by a reviewing court absent a showing of an abuse of that discretion.[2]
Porter was testifying as an expert witness. In order to testify as an expert, the following requirements of Evid.R. 702 must be met:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived form widely accepted knowledge, facts, or principles;
 "(2) The design of the procedure, test, or experiment reliably implements the theory;
 "(3) the particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
Porter was qualified to testify as an expert concerning pseudoephedrine. She testified that she has a bachelor's degree in forensic chemistry. She testified that she has tested for pseudoephedrine hundreds of times. She also explained the testing procedure.
McKay asserts that Porter was only recognized as an expert in the identification of controlled substances and that she was not an expert in non-controlled substances. McKay points to the fact that all non-controlled substances are merely listed as "non-controlled" in Porter's report.
The state established a sufficient foundation for Porter to testify as an expert regarding pseudoephedrine. The fact that the substance was not specifically listed in her report goes to the weight to be given the evidence, not its admissibility. The trial court did not abuse its discretion in allowing Porter to testify concerning pseudoephedrine.
McKay next asserts that he was prejudiced by this testimony because it was not in the report and, thus, not disclosed to the defense. This argument is dispelled by the state's bill of particulars, which disclosed that McKay was being charged with possession of pseudoephedrine. Further, the state submitted an amended bill of particulars for the sole purpose of correcting the misspelling of pseudoephedrine.
Further, if there was an error in disclosing this topic to the defense, it was cured at trial. The trial court held a side-bar with counsel to discuss the admissibility of this evidence. After the side-bar had concluded, the court allowed defense counsel the opportunity to question Porter outside of the jury. The trial court also informed defense counsel that a continuance could be requested. None was requested.
McKay's first assignment of error is without merit.
McKay's second assignment of error is:
 "The appellant's convictions were not supported by sufficient evidence."
To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[3]
With the testimony of Deputy Rose, Porter, and DEA Agent Gregory Westfall ("Westfall"), the state provided sufficient evidence that there were items found in the Pontiac 2000 to support a conviction on all of the charges.
The crux of McKay's sufficiency argument is that the state did not provide sufficient evidence linking him to the Pontiac. McKay was found at an out of state truck stop. His girlfriend was in the car when Deputy Rose approached the Pontiac. Deputy Rose also testified that McKay was attempting to enter the Pontiac. There were male clothes found in the Pontiac. Ms. Levee testified that McKay initially got out of the driver's seat of the Pontiac. Ms. Levee also testified that McKay told her he had to ditch his car. All of this evidence, taken together, is sufficient to show that McKay had access and control of the items in the Pontiac.
McKay argues that R.C 2925.01(K) prohibits possession from being inferred from mere access to the thing or substance through ownership of the premises upon which the thing was found. The criminal items were found in an automobile, not a "premises." "Premises" is not defined in R.C. 2925.[4] Therefore, it will be construed according to its plain and ordinary meaning.[5] In a criminal law context, premises is defined as "[t]he term used to in a search warrant includes land, buildings, and appurtenances thereto."[6]
The state provided sufficient evidence that McKay was in constructive possession of the items in the automobile. Constructive possession requires the ability to exercise dominion or control over the item.[7]
There was sufficient evidence presented to establish that McKay had the ability to exercise dominion or control over them.
McKay's second assignment of error is without merit.
McKay's third assignment of error is:
 "The appellant's convictions are against the manifest weight of the evidence."
In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[8]
McKay testified on his own behalf. He stated that he arrived at the truck stop in his own black pick-up truck. He then testified that he had a friend come and retrieve the black pick-up from the truck stop. This testimony was inconsistent with the testimony of Ms. Levee, who testified that McKay arrived in the Pontiac. McKay also disputed Westfall's testimony about the chemical make-up of methamphetamine.
This differing testimony was a factual issue to be determined by the jury. We do not see that the jury clearly lost its way by choosing to believe the state's witnesses rather than the testimony of McKay.
McKay's third assignment of error is without merit.
McKay's fourth assignment of error is:
 "The appellant received ineffective assistance of trial counsel in violation of his constitutional rights to such."
McKay claims that he was denied the effective assistance of trial counsel because of counsel's failure to use the services of an expert witness. Rather than using a court appointed expert to contradict the state's expert witness, defense counsel chose to put McKay on the stand as an expert to testify about the chemical content of methamphetamine. McKay argues that defense counsel should have used the expert that the trial court offered.
In State v. Bradley, the Supreme Court of Ohio has adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[9]
The decision to call witnesses is one of trial strategy, and will not be grounds for a claim of ineffective assistance of counsel unless prejudice is shown.[10] The decision to use an expert was one of trial strategy. Further, McKay was not prejudiced by this decision, because defense counsel had an opportunity to cross-examine the state's expert witnesses and McKay testified to the composition of methamphetamine.
Whether or not a defendant testifies is a tactical decision.[11]
Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion.[12] McKay has not alleged or shown that there was any coercion by his attorney to get him to testify.
Further, the ultimate decision of whether a defendant will testify on his own behalf is the defendant's.[13] As McKay has not shown any evidence of coercion, and the ultimate decision to testify was his own, his claim for ineffective assistance of counsel must fail. McKay's fourth assignment of error is without merit.
The judgment of the trial court is affirmed.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.
[1] State v. Kinley, 72 Ohio St.3d 491, 497, 1995-Ohio-279.
[2] Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299.
[3] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[4] State v. Thomas (1995), 107 Ohio App.3d 239, 243.
[5] Id. citing Youngstown Club v. Porterfield (1970),21 Ohio St.2d 83.
[6] Id. citing Black's Law Dictionary (6Ed. 1990).
[7] Id. at 245, citing State v. Boyd (1989), 63 Ohio App.3d 790,796.
[8] (Citations omitted.) State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
[9] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. (Adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.)
[10] State v. Williams (1991), 74 Ohio App.3d 686, 695.
[11] State v. Bey, 85 Ohio St.3d 487, 499, 1999-Ohio-283, quotingBrooks v. Tennessee (1972), 406 U.S. 605, 612.
[12] State v. Winchester, 8th Dist. No. 79739, 2002-Ohio-2130, at ¶ 12, citing Hutchins v. Garrison (C.A.4, 1983), 724 F.2d 1425,1436, cert. Denied, 464 U.S. 1065, and Lema v. United States (C.A.1, 1993), 987 F.2d 48, 52-53.
[13] State v. Edwards, (1997), 119 Ohio App.3d 106, 109, quotingGovernment of the Virgin Islands v. Weatherwax (C.A.3, 1996), 77 F.3d 1425, citing (1983), Jones v. Barnes 463 U.S. 745, 751.