**Robert D. FOSTER; Ann Foster, Plaintiffs–Appellants,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant–Appellee.**

No. 92–1755.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 30, 1992.

Decided Jan. 21, 1993.

W. Mark Spence, Aycock, Spence & Butler, Nags Head, NC, argued for appellant.

Linda Kaye Teal, Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., Raleigh, NC and Lawrence R. Intravia, Federal Emergency Management Agency, Washington, D.C., on brief), for appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

Ann and Robert Foster (the Fosters), plaintiffs, appeal from the district court's order granting summary judgment in favor of the defendant, the Federal Emergency Management Agency (FEMA). The district court granted summary judgment on the ground that the Fosters' flood insurance coverage did not satisfy the requirements set forth in the Upton–Jones Amendment (the amendment) to the National Flood In-. surance Act, 42 U.S.C. § 4013(c). We agree with the district court that the Fosters' failed to satisfy the amendment's requirements and accordingly affirm the grant of summary judgment for FEMA.

### I.

On August 5, 1985, the Fosters purchased an ocean-side residence in Nags Head, North Carolina. On the date of purchase, the Fosters purchased a Standard Flood Insurance Policy (SFIP) from Omaha Property and Casualty. The policy was issued pursuant to the National Flood Insurance Act and was for a one-year term, expiring August 5, 1986.

On August 5, 1986, the Fosters renewed the policy for another year. On August 5, 1987, due to pending negotiations for sale of the residence, the Fosters allowed the insurance to lapse. When the sale fell through, the Fosters renewed the policy on September 16, 1987, making the policy effective through September 16, 1988. Once again, in 1988, when the policy was due to expire, the Fosters let the policy lapse because of pending negotiations. The Fosters again renewed the policy after the deal fell through, making the policy effective through September 28, 1989.

As a result of damages caused by high tides due to winter and spring storms, the town of Nags Head condemned the Fosters' residence in April of 1989. A representative of the Department of Natural Resources and Community Development, Division of Coastal Management for the State of North Carolina, issued a Certification of Imminent Collapse for Oceanfront Structures on August 18, 1989. The property was inspected on October 6, 1989 and torn down on October 31, 1989.

After their property was certified, the Fosters submitted a claim to their flood

insurer for Upton–Jones benefits. FEMA denied coverage on the ground that the flood insurance contract had not been in continuous effect for two years prior to the date of certification, and therefore did not satisfy 42 U.S.C. § 4013(c)(4)(C)(ii).

Following the denial of their claim for insurance benefits, the Fosters filed a complaint against FEMA in district court. The district court ordered summary judgment for FEMA and dismissed the Fosters' complaint. This appeal followed.

## II.

The resolution of this dispute hinges upon our reading of 42 U.S.C. § 4013(c)(4)(C). Because this case comes to us on review of a motion for summary judgment, we review the district court's ruling *de novo. Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 118 (4th Cir.1991). The question on appeal is whether the record, when viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Centra,* 947 F.2d at 118. As the critical facts are not in dispute in this case, our review focuses on whether FEMA was entitled to judgment as a matter of law.

The district court ruled in favor of FEMA on the ground that the Fosters had failed to satisfy 42 U.S.C. § 4013(c)(4)(C)(ii). This section is part of the Upton–Jones Amendment, which amended the National Flood Insurance Act in 1987. Housing and Community Development Act of 1987, Pub.L. No. 100–242, § 544, 1987 U.S.C.C.A.N. (101 Stat.) 1815, 1940 (codified at 42 U.S.C. § 4013(c)). The amendment was enacted to create a system whereby owners of structures on land subject to imminent collapse "as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels" could have an authorized state or local agency certify that the structure was subject to imminent collapse and collect benefits for the relocation or demolition of the structure. 42 U.S.C. § 4013(c). These benefits were not intended to expand the coverage of the SFIP, but were intended to assist in lowering the high insurance costs involved with ocean and lake-side erosion. *See* H.R.Conf.Rep. No. 100–426, 100th Cong., 1st Sess. 238 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3535. The amendment was designed to facilitate that objective by giving owners an incentive to relocate the structure before it actually collapsed, thereby saving the flood insurance program the total replacement cost of the structure.[1]

---

1. In 1989, Representative Upton explained the intent behind the Amendment as follows:

In the 100th Congress, I, along with many others, cosponsored a successful amendment to the national flood insurance program which we later labeled the Jones–Upton amendment which fixed serious flaws in the program which negatively affected both homeowners as well as the environment. In the fall of 1986 terribly high water levels occurred and hundreds of homeowners around the Great Lakes with flood insurance policies faced a very difficult situation. Should they preserve their homes and relocate? Should we save the expense? Should we file flood insurance claims? No one really knew what to do, but they decided in oft many cases they actually had to wait to see their house fall into the Great Lakes. What financial incentive did these homeowners have to save their homes to prevent serious environmental problems that occurred when their homes, including the sewage systems, the septic tanks, the garage doors, the aluminum siding, their roofs, washed and tumbled into the Great Lakes? The answer was: none.

.... To address the problem, a number of us offered financial incentives to the Flood Insurance Program for homeowners to move or demolish their homes before creating environmental disaster, to draw a large payout from the National Flood Insurance Fund.... The legislation which we introduced, H.R. 2500, last year in the 100th Congress became law as section 544 of the Housing and Community Development Act of 1987. Since the enactment of this proposal, the Jones–Upton amendments, the environmental and financially expensive practices of letting homes fall into the lake waters have been replaced by a much better procedure. We saved taxpayers money by relocating structures when we can for a fraction of the cost instead of paying a full claim on the structure. We save money through alternatives of relocation or demolition and also the awards for claims are limited to the lowest of three

An owner's right to have his structure certified and to collect benefits under the amendment, however, is subject to certain eligibility requirements. The section of the amendment at issue in this case provides:

(C) The provisions of this subsection shall not apply to any structure unless the structure is covered by a contract for flood insurance under this subchapter—

(i) on or before June 1, 1988;

(ii) for a period of 2 years prior to certification under paragraph (1); or

(iii) for the term of ownership if less than 2 years.

42 U.S.C. § 4013(c)(4)(C). The purpose of this provision was apparently to prevent property owners who waited until the flood season to file a renewal for flood insurance—thereby escaping the premiums for the off-season while reaping the benefits of flood insurance during the at-risk part of the year [2]—from having their property certified and recovering benefits.

In this case, FEMA concedes that the Fosters satisfied the requirement of subsection (i)—that they were covered by a contract for flood insurance on June 1, 1988. FEMA argues, however, that in order to satisfy the statute, the insured must satisfy subsection (i) *and* subsection (ii), or subsection (iii).[3] Specifically, FEMA contends that reading subsection (i) in the disjunctive with subsections (ii) and (iii) would render "the provision repugnant to the Act," *see George Hyman Constr. Co. v. Occupational Safety & Health Review Comm'n*, 582 F.2d 834, 840 n. 10 (4th Cir.

1978), because such an interpretation would allow homeowners who had flood insurance before June 1, 1988, to let their policies lapse until the structure was near collapse and then renew the policy, thereby subverting congressional intent.

The Fosters, on the other hand, argue that the statute should be read as requiring satisfaction of subsection (i) *or* subsection (ii) *or* subsection (iii). This construction would yield results contrary to congressional intent. In fact, such a reading would allow the very abuse cited by Representative Upton as an example to occur [4]—deliberate lapses in order to save money on premiums—because under the Fosters' reading, merely having flood insurance on or before June 1, 1988 would satisfy the statute, regardless of continuity of coverage. Such a reading would clearly frustrate the intent underlying Congress' enactment of the amendment.

After a careful analysis of the statute and its purposes, we conclude that FEMA's interpretation best advances the goals set forth by Congress. Requiring the Fosters to satisfy both subsection (i) and subsection (ii) comports with Congress' intent that homeowners have two years of continuous coverage prior to certification in order to collect Upton–Jones benefits.

### III.

Applying the above-mentioned principles to the case at hand, we conclude that the Fosters are not entitled to recover benefits

---

values, the value of the policy, the assessed value of the structure, or the actual price paid for the building or home with an inflation adjustor.
135 Cong.Rec. 5729–30 (Sept. 19, 1989); *see also* H.R.Conf.Rep. No. 100–426, 100th Cong., 1st Sess. 238 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3535 (stating that "this process of advance identification is expected to reduce the value and number of NFIP claims over the long-term").
In the event that the structure collapsed before demolition, however, it was intended that flood insurance assistance would still be available. H.R.Rep. No. 100–122(I), 100th Cong., 1st Sess. 88 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3404.

**2.** Representative Upton, in commenting on the need to extend the application date of the Up-

ton–Jones amendment, 42 U.S.C. § 4013(c)(7), stated that the amendment

reduced abuse in the National Flood Insurance Program by requiring homeowners to have flood insurance policies for at least 2 years prior to their claim. Under the old system, a homeowner could literally wait until the afternoon of a storm, file for insurance, determine a policy, and at that point watch their home fall into the lake and file for a claim.

135 Cong.Rec. 5730 (1989).

**3.** The Fosters and FEMA agree that the Fosters fail to satisfy subsection (iii).

**4.** *See* 135 Cong.Rec. 5730 (1989).

under the amendment. In his affidavit dated December 31, 1991, Robert Foster admitted that the flood insurance policy had expired on September 16, 1988 and that he did not renew it until September 28, 1988. This break in coverage would be fatal to their claim for benefits but for the amendments to the SFIP in 1988. The 1987 lapse in coverage, however, defeats their claim for Upton–Jones benefits.

The SFIP, which is required to be used in transactions in the Flood Insurance Program, 44 C.F.R. § 61.13(d), provided in 1987 that if FEMA did not receive the renewal application and premium prior to the expiration date of the policy, the policy terminated. 44 C.F.R. Part 61, App. A(1), Art. VIII(G) (1987). In accordance with the regulatory scheme, the Fosters' policy contained the following language:

> This policy shall not be renewed and the coverage provided by it shall not continue into any successive policy term unless the premium payment for any successive policy term is received by us at the National Flood Insurance Program (NFIP), prior to the expiration date of this policy ...

(J.A. at 22) On May 6, 1988, however, FEMA published amendments to the SFIP in the Federal Register that altered the renewal section of the SFIP. *See* 53 Fed. Reg. 16,269 (1988). The new policy states:

> This policy shall not be renewed and the coverage provided by it shall not continue into any successive policy term unless the renewal premium payment is received by us within 30 days of the expiration date of this policy,.... If the renewal premium payment is mailed by certified mail to us prior to the expiration date, it shall be deemed to have been received within the required 30 days.

44 C.F.R. Part 44, App. A(1), at 297 (1992).

The effect to be given these amendments is governed by 44 C.F.R. § 61.13(b), which provides that "[a]ll endorsements to the Standard Flood Insurance Policy shall be final upon publication in the Federal Register for inclusion in appendix A," when read in conjunction with a liberalization clause

present in the SFIP and the Fosters' insurance policy. The Fosters' policy provided:

> While this policy is in force, should we have adopted any forms, endorsements, rules or regulations by which this policy could be broadened or extended for your benefit by endorsement or substitution of policy form, then, such matters shall be considered to be incorporated in this policy without additional premium charge and shall inure to your benefit as though such endorsement or substitution of policy form had been made.

(J.A. at 24) It appears from 44 C.F.R. § 61.13(b) and the liberalization clause that the May 6, 1988 amendment applies to the Fosters, rendering the 1988 break in coverage inapplicable to our analysis under 42 U.S.C. § 4013(c)(4)(C).

Nevertheless, even if the 1988 break in coverage is not a lapse for purposes of 42 U.S.C. § 4013(c)(4)(C), the lapse in 1987 is fatal to their claim for benefits under section 4013(c). The 1987 lapse occurred when the Fosters failed to renew their policy on August 5, 1987. This lapse occurred before the 1988 amendments to the SFIP and therefore was a lapse under the existing terms of the Fosters' policy. The Fosters renewed the policy on September 16, 1987, which is less than two years prior to the August 18, 1989 certification. Therefore, the Fosters fail to satisfy subsection (ii).

Finally, we agree with FEMA that the Fosters fail to satisfy subsection (iii)'s requirement that coverage be continuous for the term of ownership if less than two years, because admittedly, the Fosters purchased the property in 1985. Accordingly, the Fosters fail to satisfy 42 U.S.C. § 4013(c)(4)(C), and therefore, cannot recover Upton–Jones benefits.

### IV.

In light of our interpretation of section (4)(C) of the Upton–Jones Amendment to the National Flood Insurance Act, 42 U.S.C. § 4013(c), we conclude that the district court did not err in granting FEMA's motion for summary judgment. We believe that our interpretation comports with congressional intent and that our reading

of section (4)(C) furthers the purpose of the scheme established by Congress. Accordingly, we affirm.

AFFIRMED.