Stephen R. BURCH and wife, Margaret R. Burch, Plaintiffs,

v.

DIRECTOR, FEDERAL INSURANCE ADMINISTRATION; Federal Emergency Management Agency; and Federal Insurance Administration, Defendants.

No. 91–59–CIV–2–BO.

United States District Court, E.D. North Carolina, Elizabeth City Division.

April 8, 1993.

Lars P. Simonsen, Pritchett, Cooke & Burch, Windsow, NC, for plaintiffs.

Paul M. Newby, Asst. U.S. Atty., Raleigh, NC, for defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

Plaintiffs filed this suit in October of 1991 challenging defendants' cancellation of federal flood insurance benefits covering plaintiffs' house at Nags Head, North Carolina. In an Order dated August 26, 1992, the court denied the parties' cross motions for summary judgment, holding that the proper annual rate of erosion applicable to plaintiffs' property was a contested issue of material fact. See *Burch v. Director of Federal Insurance Administration,* 797 F.Supp. 482 (1992). All parties have asked the court to reexamine this ruling, contending that the erosion rate is not a disputed issue, and that the case is therefore ripe for ruling as a matter of law.

■ Upon reconsideration, the court finds that the sole issue remaining in this action is not whether the proper erosion rate was applied as a matter of fact, but whether the Federal Emergency Management Agency (FEMA) may apply one erosion rate when determining whether a structure is eligible for relocation benefits and another rate when calculating the proper setback for flood insurance eligibility. For the reasons set out below, the court holds that neither the National Flood Insurance Act nor its implementing regulations permit FEMA to apply two different erosion rates, and that summary judgment for plaintiffs is therefore proper.

The Upton–Jones Amendment to the National Flood Insurance Act, 42 U.S.C. § 4013, extends eligibility for relocation benefits to insured structures located within the "zone of imminent collapse." Under 42 C.F.R. § 59.1, the zone is defined as the area extending from the first line of beach vegetation inland

to a specified point calculated using the following formula:

(Average annual erosion (in feet) × 5 years) + 10 feet

It is undisputed that the North Carolina Division of Coastal Management (DCM), administering the program of eligibility for Upton–Jones Amendment benefits under the National Flood Insurance Act, determined that the average annual erosion rate for plaintiffs' property was three feet. Consequently, the zone of imminent collapse was determined to be 25 feet ((3 feet/year × 5 years) + 10 feet = 25 feet). At the time when they applied for relocation benefits, plaintiffs' house was located 40 feet back from the vegetation line, or 15 feet landward of the zone of imminent collapse.

Although ordinarily an insured structure must be within the calculated zone of imminent collapse to be eligible for relocation benefits, the regulations provide an exception in 44 C.F.R. § 63.17. The certifying agency is empowered to certify a structure outside the zone as being in imminent danger of collapse if the particular site is subject to "unusual erosive conditions."

In reviewing the plaintiffs' application for relocation benefits, the DCM determined that the insured property was located in an "overwash" area, that it stood on ground lower than that of neighboring homes, and that it was not similarly protected by seaward dunes. Because of these unique topographical conditions, DCM determined that the structure was vulnerable to erosion damage during acute weather conditions when sea water would be channeled across the property.

These "unusual erosive conditions," the DCM found, warranted making an exception pursuant to 44 C.F.R. 63.17 to the zone of imminent collapse. Accordingly, DCM applied a six-foot per year erosion rate in determining whether plaintiffs' house was in danger of imminent collapse, rather than the three-foot average rate used as a general rule.

Using the formula set out above, the DCM determined that any structure on plaintiffs' property would be in danger unless it was more than 40 feet inland from the vegetation line. ((6 feet/year × 5 years) + 10 feet = 40 feet). Because plaintiffs' house was located 40 feet from the vegetation line, the DCM determined that the insured property was entitled to relocation benefits under the Upton–Jones Amendment.

Once a structure is found to be in imminent danger of collapse (and therefore eligible for relocation benefits), 42 U.S.C. § 4013(c) requires that it be relocated to a site beyond the "30–year erosion setback." The setback line represents a 30–year application of the annual erosion rate, and therefore is drawn landward from the first stable beach vegetation, at a distance equal to 30 times the average erosion rate. 44 C.F.R. § 59.1. After the plaintiffs' house had been approved for benefits, the DCM certified that the plaintiffs' proposed relocation site, 90 feet landward of the beach vegetation line, complied with the 30–year setback requirement, as calculated using a three-foot per year erosion rate. (30 years × 3 feet/year = 90 feet). Plaintiffs moved their house to the certified site, but the defendants cancelled plaintiffs' flood insurance coverage on the ground that DCM should have used a six-foot per year erosion rate in calculating the proper 30–year setback.

█ The parties do not contest the DCM's finding that the plaintiffs' insured property was entitled to relocation benefits under the Upton–Jones Amendment. Plaintiffs contend, however, that FEMA may not lawfully apply the six-foot per year erosion rate in determining the proper 30–year setback line.

After a careful review of the regulations in issue, the court must agree with plaintiffs. The formula for determining the imminent collapse zone (as set out in 42 C.F.R. 59.1) and the formula for determining the 30–year setback line (as set out in 44 C.F.R. 59.1) are both based on the average annual erosion rate. Since both determinations are made for the same parcel of property, the annual erosion rate must necessarily be the same for each calculation, and FEMA must use the same rate in making both imminent collapse zone and 30–year setback determinations.

Imminent collapse certifications are used to qualify endangered homes for relocation benefits. They obligate the federal government to an immediate cash payment, thereby encouraging the homeowner to move his house before it is damaged or destroyed. *See Foster v. FEMA,* 984 F.2d 128, 130 n. 1 (4th Cir.1993). The method used to grant imminent collapse certification is based on the short-term threat to an insured property. It is flexible, allowing consideration of unique factors, such as storm surges, which pose an immediate danger over and above the average pace of erosion. Where such unusual factors are present, rigid adherence to the mathematical certification formula could result in severe property damage or loss of life. Because of their importance, the Director has expressly retained the authority to review each state-issued imminent collapse certificate as part of his Final Determination of benefits. 44 C.F.R. § 63.17.

Thirty-year setback certifications, on the other hand, merely require the government to maintain pre-existing coverage on a property which is safer from flood damage than when the policy was first issued. In return, the setback requirement ensures that policyholders relocate their homes far enough away from the water so that the government will not have to make another relocation payment for some time. The Director has not reserved the right to review individual setback certifications.

The 30–year setback point is calculated from established, long-term erosion averages, which do not change because of potential, short-term variances caused by storms. Such periodic fluctuations are already a part of the historical erosion data upon which the average rate is based. Adherence to the average rate not only yields the most accurate setback data, but also provides homeowners with a measure of certainty in relocating their homes.

Had the average annual erosion rate been six feet, as FEMA now claims, the plaintiffs' structure would have been within the zone of imminent collapse. The unchallenged finding of the DCM, however, was that plaintiffs' property was not within the zone of imminent collapse, and therefore could qualify for Up-ton–Jones benefits only through application of the "unusual erosive conditions" exception set out in 44 C.F.R. § 63.17.

Pursuant to the exception, the DCM calculated a six-foot annual erosion rate for this particular property, making it eligible for relocation. Since that calculation was made under the exception, however, it did not affect the average annual erosion rate applicable as a general rule. FEMA does not contest the DCM's initial finding that the average annual erosion rate is three feet, and since 44 C.F.R. § 59.1 makes no exception for "unusual erosive conditions," FEMA is bound by regulation to apply this rate in determining the 30–year setback line. Using the formula set out in the regulation, the setback line would be 90 feet back from the vegetation line. (3 feet/year × 30 feet = 90 feet). Plaintiffs' house was moved back beyond that point, and consequently is eligible for continued insurance.

Accordingly, upon reconsideration, plaintiffs' motion for summary judgment is ALLOWED, and defendants' motion for summary judgment is DENIED. It is further DECLARED that the current situs of plaintiffs' home may not, without more, be the basis for revoking their eligibility for flood insurance under the terms of the National Flood Insurance Program. Defendants are hereby ORDERED to reinstate plaintiffs' insurance coverage, and to credit plaintiffs with coverage for a period equal to the period between March 19, 1991, the date of the invalid cancellation, and December 13, 1992, the date on which the policy was due for renewal.

SO ORDERED.