28 F.3d 1209
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David Earl HUFFSTETLER, Petitioner-Appellant,
v.
Gary T. DIXON, Warden; North Carolina Attorney General,
Respondents-Appellees.
 No. 93-4003.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 7, 1994.
Decided: June 30, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CA-91-162-C-C-MU)
 Kenneth J. Rose, Durham, North Carolina, for Appellant.
 Joan Herre Byers, Special Deputy Attorney General, Gerald Patrick Murphy, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 John R. Rittelmeyer, Andrew O. Whiteman, Graham & James, Raleigh, North Carolina, for Appellant.
 Michael F. Easley, Attorney General of North Carolina, Barry S. McNeill, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 W.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 David Earl Huffstetler was convicted by a jury in Gaston County, North Carolina, for the first degree murder of his mother-in-law, Edna Cordell Powell. The jury sentenced Huffstetler to death. After exhausting his state appeals and post-conviction remedies, Huffstetler filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 (1988), which was denied by the district court. Huffstetler appeals that judgment and, finding no error, we affirm.
 
 I.
 
 2
 In its opinion denying Huffstetler's direct appeal, the North Carolina Supreme Court fully summarized the facts involving the brutal murder of Edna Powell. See State v. Huffstetler, 322 S.E.2d 110 (N.C.1984), cert. denied, 471 U.S. 1009 (1985). Consequently, we will provide only a brief summary of the facts here, which we glean from the entirety of the evidence presented in this case. On the morning of January 1, 1983, Huffstetler went to Powell's trailer, located next door to the trailer in which he and his wife, Ruby, lived. He had been drinking whiskey that morning and had injected Dilaudid, a narcotic drug. After unsuccessfully inquiring into the whereabouts of his wife and stepson, and as Huffstetler turned to leave, Powell accused him of being a drunk. Huffstetler responded that he had to drink to find out where his wife was because no one would tell him. Powell rejected Huffstetler's excuses for his drinking, professed ignorance as to her daughter's whereabouts, and called him a liar. Powell further accused Huffstetler of making a threatening telephone call to her the previous night. At this point, Huffstetler grabbed a cast-iron skillet and started hitting her.
 
 
 3
 At trial, the pathologist testified that Huffstetler hit Powell with such force that the skillet broke, and she was left with more than fourteen lacerations on her head and body. A subsequent examination of the body revealed extreme bruising and swelling of both eyes, blood in the mouth and nostrils, complete breaks of the jaws on both sides, and fractures of the spine, neck, and left collarbone. Behind Powell's right ear was a large wound where the skull had been pushed into the brain. The pathologist also described the existence of a bilateral skull fracture and a "tremendous" hemorrhage in the brain. The pathologist testified that the causes of death included skull fractures, hemorrhaging, edema of the brain, and injury to major life centers causing cardio-respiratory arrest.
 
 
 4
 After killing Powell, Huffstetler left the trailer and went to his own trailer to change clothes and to get a pair of gloves. He went back to Powell's trailer and, wearing the gloves, picked up the skillet and threw it in a field behind the trailer. He placed his blood splattered clothes in a plastic trash bag and threw the bag in a ditch by the side of the road. He then went to stay with a girlfriend until his arrest on January 3, 1983.
 
 
 5
 At the guilt phase of the trial, Huffstetler did not testify or offer evidence. The State's case consisted of a variety of circumstantial evidence, the most damaging being the bloodied clothes and gloves, identified by Huffstetler's wife as belonging to him. The blood on the clothes and the hair on the gloves matched that of Powell. The jury found Huffstetler guilty of first degree murder.
 
 
 6
 At the sentencing phase of the trial, Huffstetler testified in his own behalf. He stated that he had had a drug problem for most of his adult life, that he was currently injecting $150 to $200 worth of Dilaudid per day, and that he supported his habit by shoplifting and working odd jobs. He admitted killing Powell in the manner described above. He testified, however, that his relationship with Powell previously had been good, and cried on the stand when asked to describe the relationship further.
 
 
 7
 Ruby Huffstetler, Powell's daughter and Huffstetler's wife, testified that Huffstetler and her mother generally got along well. She stated that Huffstetler was usually not a mean or vicious person, but that he had an uncontrollable drug and alcohol habit. Janice Redding, Huffstetler's sister, testified that she had never noticed any animosity between Huffstetler and Powell. Masel Huffstetler, Huffstetler's mother, testified that she had never known him to be violent, and that she knew of his drug problem.
 
 
 8
 The trial judge began his instructions to the jury by requiring them to determine whether Huffstetler should receive a sentence of life imprisonment or death. The jury was told it could find as an aggravating circumstance that the murder was "especially heinous, atrocious, or cruel," and mitigating circumstances, including the following: (1)that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired; (2)that the killing occurred contemporaneously with an argument between Huffstetler and Powell, a person with whom he was acquainted through a domestic relationship, and that the murder weapon was acquired at the scene of the crime rather than taken there; and (3)that the defendant did not have a history of violent behavior. (J.A. at 135-36.) In addition, the judge told the jury that it could find any other mitigating circumstances arising from the evidence. If the jury found both aggravating and mitigating circumstances present, it was then instructed to determine whether, beyond a reasonable doubt, the aggravating circumstance outweighed the mitigating circumstances. Finally, if the jury found that the aggravating circumstance indeed outweighed the mitigating, then it was required to decide whether, beyond a reasonable doubt and in light of the mitigating circumstances, the aggravating circumstance was sufficient to impose the death penalty.
 
 
 9
 The jury found the aggravating circumstance and all of the specifically described mitigating circumstances present in this case, but found no other mitigating circumstance arising from the evidence. The jury returned a recommendation of death.
 
 
 10
 The North Carolina Supreme Court affirmed Huffstetler's conviction and sentence, see Huffstetler, 322 S.E.2d at 127, and the United States Supreme Court denied certiorari to review that decision.
 
 
 11
 Huffstetler v. North Carolina, 471 U.S. 1009 (1985). Huffstetler then filed a Motion for Appropriate Relief, a state post-conviction procedure pursuant to N.C. Gen.Stat. Sec. 15A-1411 (Michie 1993), with the Gaston County Superior Court, which was denied. Huffstetler subsequently filed an additional Motion for Appropriate Relief raising six new claims, which was also denied. The North Carolina Supreme Court and the United States Supreme Court again denied certiorari and the execution date was reset. State v. Huffstetler, 402 S.E.2d 841 (N.C.1991), cert. denied, 112 S.Ct. 436 (1991).
 
 
 12
 Huffstetler then filed a Sec. 2254 petition in the district court raising seventeen separate claims and filed an unopposed motion for stay of execution. The district court granted the stay of execution, but rejected all of Huffstetler's claims and entered judgment denying his writ of habeas corpus. Huffstetler now appeals the district court's rejection of six of his claims, arguing that: (1) North Carolina's construction of the "especially heinous, atrocious, or cruel" aggravating circumstance, as applied to his case, is unconstitutional; (2) the prosecutor's arguments during both the guilt and the sentencing phases of the proceedings violated his Fifth Amendment rights; (3) he received ineffective assistance of counsel; (4) the trial court's instructions created the unconstitutional risk that the jury would believe that mitigating circumstances must be found by a unanimous jury; (5) the trial court erred in excluding certain mitigating evidence; and (6) the trial court's sentencing instructions precluded the jury from considering his remorse. We will address each of these contentions in the order outlined above and, because the district court dismissed Huffstetler's claims on summary judgment, we review its conclusions de novo. Foster v. Federal Emergency Management Agency, 984 F.2d 128, 130 (4th Cir.1993).
 
 II.
 
 13
 Huffstetler first argues that, as applied to his case, North Carolina's construction of the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague and overbroad. Claims of vagueness of aggravating circumstances are analyzed under the Eighth Amendment, and the inquiry is whether the death penalty is being imposed "under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capri cious manner." Godfrey v. Georgia, 446 U.S. 420, 427 (1980). In Godfrey, the aggravating circumstance at issue permitted the defendant to be sentenced to death if the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Id. at 422 (quoting Ga.Code Sec. 27-2534.1(b)(7) (1978)). The trial judge instructed the jury using the words of the relevant statute, but the jury verdict, which sentenced the defendant to death, only recited that the murder was "outrageously or wantonly vile, horrible and inhuman." Id. at 428. In affirming the death sentence, the Georgia Supreme Court did not determine whether the murder in fact involved torture or an aggravated battery, but only stated that the evidence supported the finding of the aggravating circumstance. The Supreme Court held that such an application of the aggravating circumstance was unconstitutionally vague. The Court stated, "[t]here is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibilities could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' " Id. at 428-29.
 
 
 14
 Similarly, in Maynard v. Cartwright, 486 U.S. 356, 358-59 (1988), an Oklahoma jury sentenced a defendant to death based in part on the aggravated circumstance that the offense was "especially heinous, atrocious, or cruel." The Oklahoma Court of Criminal Appeals affirmed. The Supreme Court held that this aggravating circumstance, like the one in Godfrey, was unconstitutionally vague and overbroad, because it did not give a jury sufficient guidance to determine when the death penalty should be imposed. Id. at 363-64. The Court, however, noted that the state court's imposition of a limiting construction, such as one requiring torture or physical abuse of the victim, could sufficiently narrow the aggravating circumstance to be constitutionally acceptable. Id. at 364-65.
 
 
 15
 In this case, the trial court gave the jury the following aggravating circumstance instruction:
 
 
 16
 Was the murder of Edna Powell especially heinous, atrocious, or cruel? As to this circumstance, the burden is upon the State to prove to you from the evidence, beyond a reasonable doubt, that the murder in this case was especially heinous, atrocious, or cruel. A person of ordinary sensibility could fairly characterize almost every murder as especially heinous, atrocious, or cruel. Not every murder is especially so. Before you may find the existence of this circumstance, the State must prove beyond a reasonable doubt that the brutality involved in the murder in this case exceeds that normally present in any killing. The words "especially heinous, atrocious, or cruel" mean extremely or particularly or especially heinous or atrocious or cruel. Heinous means hateful, odious, and reprehensible, and it also means extremely wicked or shockingly evil. Atrocious means marked by or given to extreme wickedness, brutal or cruel, marked by extreme violence or savagely fierce, outrageously wicked or violent. Cruel means designed to inflict a high degree of pain, utterly indifferent to or enjoyment of the suffering of others. For you to find this murder to have been especially heinous, atrocious, or cruel, it must have been done without conscience, pitiless, and so as to be unusually torturous to Edna Powell. That is, in the nature of torture or serious physical abuse of Edna Powell before death.
 
 
 17
 (J.A. at 137-38.)
 
 
 18
 We find this instruction to be constitutionally sufficient. Although the trial judge in this case used the vague terms, "heinous, atrocious, or cruel," he elaborated thereon with a constitutional limiting construction of the aggravating circumstance. The judge instructed the jury several times that every murder does not fit this aggravating circumstance in that every murder is not "especially heinous, atrocious, or cruel." Furthermore, he instructed the jury that to find this aggravating circumstance present, the jury must find torture or serious physical abuse of the victim, a limiting construction that the Supreme Court approved in Maynard.
 
 
 19
 We find this case to be analogous to Walton v. Arizona, 497 U.S. 639, 645 (1990), in which the Court approved the Arizona Supreme Court's limiting construction of the statutory aggravating circumstance that allowed imposition of the death penalty if the murder was committed "in an especially heinous, cruel or depraved manner." The Arizona Supreme Court limited that circumstance to instances when the defendant inflicts mental anguish or physical abuse upon the victim before his or her death. Id. at 654. The Court held that this definition was constitutionally sufficient because it gave meaningful guidance to the sentencer. Id. at 655. Likewise, in this case, the trial judge informed the jury that to find the aggravating circumstance present, the jury must find some torture or physical abuse of the victim before death. Thus, we conclude that the trial judge's aggravating circumstance instruction met the requirements of the Constitution.
 
 
 20
 Huffstetler also argues that, assuming a sufficient instruction to the jury, the North Carolina Supreme Court's subsequent construction of the aggravating circumstance violated his constitutional rights. We find this contention without merit. In affirming the jury's sentence, the North Carolina Supreme Court found that physical abuse of the victim occurred before death. The court stated, "Edna Powell died as a result of being battered to death by what can only have been a prolonged series of blows, blows with a cast-iron skillet so severe as to fracture her skull, neck, jaws, and collarbone and to cause her skull to be pushed into her brain." Huffstetler, 322 S.E.2d at 125. Thus, the North Carolina Supreme Court's affirmance of Huffstetler's sentence did not violate his rights under the Eighth Amendment.[1]
 
 III.
 
 21
 Huffstetler next argues that the prosecutor's closing arguments at both the guilt and sentencing phases of the trial violated his Fifth Amendment rights.
 
 A. The Guilt Phase
 
 22
 Huffstetler did not take the stand to testify during the guilt phase of the trial. During closing argument, Huffstetler's attorney mentioned several times that he failed to present any evidence, but stated that "the defendant does not have to prove his own innocence." (J.A. at 11.) Huffstetler's counsel went on to argue that the State's case was a very weak, circumstantial case. In response to those arguments, the prosecutor made the following statement during his closing argument, to which Huffstetler objects:
 
 
 23
 He's argued to you that the State's case they brought to you was weak, a weak case. That the State is relying upon circumstantial evidence. Well, Ladies and Gentleman, as far as we have been able to determine ... there were only two people in that trailer the morning that Edna Powell died. Edna Powell was still there. Only one person left. Only one person left in that trailer. Since, by the torturous events, we do not have an independent witness who can come in and testify to you that, "yes, I was standing outside the door, and I know the defendant Huffstetler, and he came out with blood on his hand, and then I went in immediately and saw Edna Powell, and Edna Powell was there dead and bloody"--even that, Ladies and Gentlemen, would require you to use circumstantial evidence because the person standing outside the trailer did not see who rendered to Edna Powell the blows that took her life.
 
 
 24
 (J.A. at 19-20.)
 
 
 25
 Huffstetler contends that these statements constitute an impermissible comment on his failure to testify. The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965). However, when a prosecutor's comments are merely a fair response to a claim made by a defendant or his counsel, there is no constitutional violation. United States v. Robinson, 485 U.S. 25, 32 (1988). Here, the prosecutor never directly referred to Huffstetler's failure to testify. His comments did not treat the defendant's silence as evidence of guilt, but merely rebutted the claim that the State's case was weak and circumstantial. "It is one thing to hold ... that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge ... that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence." Id. at 34. We conclude that the prosecutor's comments in this instance were merely a fair response to defense counsel's characterization of the State's evidence.
 
 B. Sentencing Phase
 
 26
 We next turn to the issue of whether several of the prosecutor's statements in his closing argument during the sentencing phase of the trial violated Huffstetler's Fifth Amendment rights by impermissibly commenting on his failure to testify during the guilt stage of the trial. Huffstetler testified during the sentencing phase, admitting his guilt, and describing the manner in which he killed Powell. While presenting his closing arguments to the jury, the prosecutor made the following statements:
 
 
 27
 He got on the stand yesterday after we had sat here, tried him last week and this week, and you had to sit and struggle, and I know it was a struggle to find the man guilty of murder in the first degree on circumstantial evidence, and he knew in his heart that he was guilty. He so loves his life that he could not in all honesty face you, hoping that one of the State's witnesses would die on the way to the courthouse and he'd walk free, but it didn't happen.
 
 
 28
 ....
 
 
 29
 Well, Ladies and Gentlemen, whatever he did, yesterday he removed that burden from you in your deliberation. What ever decision that you reach as to punishment, you know that you're punishing the guilty. You can rest assured at night that whatever is administered to him, he is not innocent of the death of Edna Powell.
 
 
 30
 (J.A. at 106-07.)
 
 
 31
 The State argues that these statements are not comments on Huffstetler's failure to testify, but rather assertions to rebut earlier statements by defense counsel during the guilt phase of the trial concerning the possibility of executing an innocent person. We agree. However, even if these statements rise to the level of constitutional error, they are clearly within the harmless error standard.
 
 
 32
 In Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993), the Supreme Court announced a general rule, requiring federal courts to apply a harmless error analysis in determining the appropriateness of habeas relief in the event of constitutional trial error. Under Brecht, this court may not grant habeas relief unless Huffstetler demonstrates that the purported constitutional error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Smith v. Dixon, 14 F.3d 956, 975 (4th Cir.1994) (en banc) (quoting Brecht, 113 S.Ct. at 1722). Harmless error analysis is clearly applicable to a claim of improper prosecutorial comments on a defendant's silence at trial. United States v. Hasting, 461 U.S. 499, 508 (1983).
 
 
 33
 After careful review of the record, we determine that Huffstetler has failed to meet the Brecht harmless error standard, as he has not made a showing that the prosecutor's comments had any effect on the jury's verdict of a death sentence. At the time of the prosecutor's comments, the jury had already heard the testimony of the pathologist who had performed an autopsy on Powell's body, describing in detail her massive injuries, including her fractured skull, neck, jaws, and collarbone, and the large wound where her skull had been pushed into her brain. In addition, Huffstetler admitted the brutal killing of his mother-in-law, and the steps he had taken to conceal his crime. We find it improbable that a jury, faced with such evidence of egregious conduct, would instead be swayed by isolated comments in closing argument concerning Huffstetler's failure to testify at the guilt phase. Accordingly, we determine that, even if the prosecutor's comments were improper, they did not have a "substantial or injurious effect" on the jury's verdict.
 
 IV.
 
 34
 We next address the issue of whether Huffstetler received effective assistance of counsel within the requirements of the Sixth Amendment. We analyze counsel's performance under the standard articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate that his counsel was so ineffective as to violate Sixth Amendment standards, a habeas petitioner must prove two elements. First, he must show that the representation fell below an objective standard of reasonableness. Id. This requires demonstrating that the performance of counsel was so deficient that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, petitioner must show that this deficient performance prejudiced him, in that it deprived him of a fair trial. Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id.
 
 
 35
 We first consider whether the representation by Huffstetler's counsel was objectively reasonable. In making this determination, we grant deference to the performance of counsel. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.
 
 
 36
 Huffstetler contends that because his counsel failed to conduct an adequate pre-trial investigation of mitigating psychological evidence, they rendered constitutionally deficient assistance. Although counsel were aware of at least one prior hospitalization at a mental health facility, they did no further investigation. Huffstetler contends that an investigation would have revealed that he had been hospitalized at various psychiatric and substance abuse treatment centers at least seven times since 1967. In addition, counsel were unaware that Huffstetler had voluntarily committed himself to a mental hospital for a five-day period less than six weeks before the murder took place.
 
 
 37
 After careful review of the record, we agree that Huffstetler's counsel should have undertaken a more thorough investigation of his treatment for psychological problems and substance abuse. However, we do not need to decide whether the assistance of counsel met the objectively reasonable standard because, even if their representation of Huffstetler was constitutionally deficient, Huffstetler has failed to show that he suffered actual prejudice from any errors committed by his counsel.
 
 
 38
 To demonstrate actual prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Thus, if the petitioner is challenging a death sentence, as Huffstetler is here, he must show that, absent the errors of counsel, the sentencer would have concluded that the balance of the aggravating and mitigating circumstances would warrant life imprisonment rather than the death sentence. Whitley v. Bair, 802 F.2d 1487, 1493 (4th Cir.1986), cert. denied, 480 U.S. 951 (1987).
 
 
 39
 In this case, counsel did present evidence at the sentencing phase concerning Huffstetler's drug and alcohol abuse and his one period of hospitalization. Ruby Huffstetler testified that her husband had a serious drug habit for which he had attempted to get professional help on several occasions. She stated that she once committed him to Broughton Hospital, a state mental hospital in Morganton, North Carolina, where he stayed for approximately one week. Huffstetler's mother testified about his drug problem, and Huffstetler himself told the jury of his Dilaudid addiction. Indeed, the jury was well aware of Huffstetler's addiction, as evidenced by their finding of the mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. Accordingly, Huffstetler has failed to show that he was prejudiced by the lack of further evidence as to his psychological problems and substance abuse.
 
 V.
 
 40
 Huffstetler also alleges that the jury instructions created an unconstitutional risk, under Mills v. Maryland, 486 U.S. 367 (1988), and McKoy v. North Carolina, 494 U.S. 433 (1990), that a jury would believe that mitigating circumstances had to be found by a unanimous vote. In Mills, the Supreme Court reversed a death sentence when it concluded that the jury instructions and verdict form presented a risk that a juror may have believed himself to be precluded from considering evidence, which he individually found to be mitigating, because that evidence had not been unanimously adopted as mitigating by all twelve jurors. Mills, 486 U.S. at 384. The Court held that a rule requiring unanimity before a juror may consider a mitigating factor violated the fundamental rule that a sentencer may not be precluded from considering any aspect of the defendant's character or record as a mitigating factor. Id. at 375. See also Eddings v. Oklahoma, 455 U.S. 104, 110 (1982); Lockett v. Ohio, 438 U.S. 586, 604 (1978) (plurality opinion).
 
 
 41
 In determining that the jury verdict form and instructions created such an unconstitutional risk, the Mills Court noted that the jury verdict form specifically required unanimity by necessitating an entry of "Yes" for each mitigating circumstance found. The Court found that nothing in either the verdict form or in the judge's instructions suggested to the jury that it could mark "Yes" as to any mitigating circumstance unless all twelve jurors agreed. Mills, 486 U.S. at 378-79.
 
 
 42
 The Court again considered this question in McKoy v. North Carolina, where the trial court instructed the jury, both orally and in a written verdict form, with regard to mitigating evidence as follows: "Do you unanimously find from the evidence, the existence of one or more of the following mitigating circumstances?" 494 U.S. at 436. The judge submitted eight possible mitigating circumstances to the jury, and further instructed the jury, " '[i]f you do not unanimously find this mitigating circumstance by a preponderance of the evidence, so indicate by having your foreman write, 'No' ... on the verdict form.' " Id. (citations omitted). The jury unanimously found the existence of only two mitigating circumstances. The Court held this sentencing scheme invalid for the same reasons articulated in Mills. Id. at 444.
 
 
 43
 Here, Huffstetler argues that, like Mills and McKoy, the jury instructions and verdict form created the intolerable risk that he was sentenced to death without consideration of mitigating circumstances because of the unanimity requirement. We disagree. The instructions and jury form in this case are almost identical to ones this court has previously approved as lacking the overarching unanimity requirement struck down in Mills and McKoy. See Smith v. Dixon, 14 F.3d 956, 981 n. 15 (4th Cir.1994) (en banc); Maynard v. Dixon, 943 F.2d 407, 420 (4th Cir.1991), cert. denied, 112 S.Ct. 1211 (1992). For example, like Smith and Maynard, the verdict form here did not require unanimity in order to find the existence of a mitigating circumstance. In addition, our review of the sentencing instructions reveals the lack of a general unanimity instruction. The judge instructed the jury that to impose the death sentence it needed to unanimously determine that: 1)a statutory aggravating circumstance existed at the time of the murder; 2)any mitigating circumstances did not outweigh the aggravating circumstance; and 3) the aggravating circumstance is sufficiently substantial to call for the death penalty. The jury, however, was not instructed that it must find the existence of the mitigating circumstances only by unanimous vote. In fact, these instructions are virtually identical to ones recently approved in Smith, 14 F.3d at 981 n. 15. Accordingly, we find that the verdict form and instructions in this case were distinguishable from the ones in Mills and McKoy in that they allow a sentencer to consider all the mitigating circumstances deemed relevant.[2]
 
 
 44
 Moreover, any error regarding these instructions would be harmless under the standard articulated in Brecht, 113 S.Ct. at 1722, because such error lacked any "substantial or injurious effect or influence in determining the jury's verdict." In this instance, the jury found the existence of all specifically described mitigating circumstances.
 
 VI.
 
 45
 The next issue we consider is Huffstetler's claim that he was precluded from presenting mitigating evidence. During the sentencing phase of the trial, the judge did not allow Janice Redding, Huffstetler's sister, to testify whether he was a violent person. Huffstetler is correct in his assertion that he is permitted to present all available mitigating evidence. See Eddings v. Oklahoma, 455 U.S. 104, 112 (1982); Lockett v. Ohio, 438 U.S. 586, 604 (1978). However, this court has held that the holdings of Eddings and Lockett do not preempt state courts from administering state rules of evidence. Hutchins v. Garrison, 724 F.2d 1425, 1437 (4th Cir.1983), cert. denied, 104 S.Ct. 750 (1984). For example, in Hutchins, we held that a court could strike testimony from witnesses presenting mitigating evidence when they strayed from the subject before the court. Id.
 
 
 46
 From examining the excerpts of Redding's testimony, we determine that she was simply precluded from testifying on subjects about which she lacked direct knowledge. Redding testified that she left the family home at age sixteen and had not seen her brother frequently thereafter. Although the court allowed her to testify that Huffstetler was not violent as he was growing up, the court did not allow her to testify as to whether he had a history of violent conduct as an adult. The judge obviously excluded Redding's testimony as to her brother's recent behavior because she had had little contact with him since she left home and consequently lacked direct knowledge of his conduct as an adult.
 
 
 47
 Furthermore, the exclusion of this evidence was clearly harmless under Brecht, 113 S.Ct. at 1722, in that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Huffstetler presented evidence from both his mother and his sister that he was not a mean or violent person, and the jury found in mitigation that Huffstetler did not have a history of violent conduct. Accordingly, we reject Huffstetler's claim on this issue.
 
 VII.
 
 48
 Huffstetler's final argument is that the trial judge's instructions precluded the jury from considering his remorse. The judge refused to present to the jury the following submitted instruction as a mitigating factor: "during the sentencing phase, the Defendant testified under oath and admitted his role in the victim's death.... [T]his admission of wrongdoing reflects a potential for rehabilitation." (J.A. at 155.)
 
 
 49
 Huffstetler contends that the judge's refusal to give this mitigating circumstance instruction essentially prevented the jury from considering his remorse when determining his sentence. We disagree. There is no constitutional requirement that all mitigating evidence be spelled out in jury instructions for the jury to be able to consider and give effect to the evidence before them. "As long as the mitigating evidence is within 'the effective reach of the sentencer,' the requirements of the Eighth Amendment are satisfied." Johnson v. Texas, 113 S.Ct. 2658, 2669 (1993).
 
 
 50
 Here, the jury heard Huffstetler testify and briefly saw him weep over his involvement in his mother-in-law's death before he left the stand to compose himself. Moreover, the judge instructed the jury that they could consider any circumstance arising from the evidence which they believed suggested a lesser penalty. Therefore, we conclude that the jury had a meaningful basis to consider Huffstetler's remorse as a mitigating circumstance.
 
 VIII.
 
 51
 In conclusion, we find Huffstetler's claims to be without merit. Accordingly, we affirm the denial of habeas relief, and dissolve the stay of execution granted by the district court.
 
 AFFIRMED
 
 
 [1]
 Huffstetler also argues that he was the first defendant on trial for a capital crime in North Carolina in which the aggravating circumstance of "especially heinous, atrocious, or cruel" was applied without a finding of physical abuse or torture before the victim's death. Huffstetler claims that this construction was not clearly announced prior to his capital trial, and thus was in violation of due process because he received insufficient notice that a jury could find the presence of this aggravating circumstance without finding physical abuse or psychological torture before the victim's death. This argument is unpersuasive because the jury was indeed instructed that a finding of physical abuse or torture before death was required before they could find the presence of the "especially heinous, atrocious or cruel" aggravating circumstance. Accordingly, this was not a new construction of the aggravating circumstance and Huffstetler's contention is without merit
 
 
 [2]
 The State argues that we need not reach the merits of this issue, since Mills and McKoy constitute new rules under federal law, and are, therefore, not subject to retroactive application. However, this court has determined that even if the rules in Mills and McKoy are new rules, they fall within the second exception of Teague v. Lane, 489 U.S. 288, 311 (1989), in that the rules of Mills and McKoy are aimed at improving the accuracy of the trial, and are "bedrock procedural elements," which are "implicit in ordered liberty." Williams v. Dixon, 961 F.2d 448, 456 (4th Cir.1992), cert. denied, 113 S.Ct. 510 (1992). Accordingly, this court has held that Mills and McKoy should be applied retroactively. In addition, in its brief, the State waived its argument that federal review of this issue is procedurally barred; therefore, we may reach the merits of this claim